UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

SUE ANN WARD,

    Plaintiff,

v.                                    CASE NO. 6:21-cv-512-MCR

ACTING COMMISSIONER OF
THE SOCIAL SECURITY
ADMINISTRATION,

    Defendant.

_____/

## MEMORANDUM OPINION AND ORDER[1]

**THIS CAUSE** is before the Court on Plaintiff's appeal of a partially unfavorable decision denying her application for a period of disability, disability insurance benefits ("DIB"), and supplemental security income ("SSI"). Following an administrative hearing held on February 24, 2020, the assigned Administrative Law Judge ("ALJ") issued a decision, finding Plaintiff not disabled from May 31, 2015, the alleged disability onset date, through September 24, 2019.[2] (Tr. 14.) Based on a review of the record, the briefs, and the applicable law, the Commissioner's decision is **REVERSED and REMANDED**.

---

[1] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. (Doc. 18.)

[2] Plaintiff had to establish disability on or before September 30, 2018, her date last insured, in order to be entitled to a period of disability and DIB. (Tr. 14.)

## I.   Standard of Review

The scope of this Court's review is limited to determining whether the

Commissioner applied the correct legal standards, *McRoberts v. Bowen*, 841

F.2d 1077, 1080 (11th Cir. 1988), and whether the Commissioner's findings

are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389,

390 (1971).  "Substantial evidence is more than a scintilla and is such

relevant evidence as a reasonable person would accept as adequate to support

a conclusion." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th

Cir. 2004).  Where the Commissioner's decision is supported by substantial

evidence, the district court will affirm, even if the reviewer would have

reached a contrary result as finder of fact, and even if the reviewer finds that

the evidence preponderates against the Commissioner's decision.  *Edwards v.*

*Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d

1356, 1358 (11th Cir. 1991).  The district court must view the evidence as a

whole, taking into account evidence favorable as well as unfavorable to the

decision.  *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995); *accord Lowery*

*v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (stating the court must

scrutinize the entire record to determine the reasonableness of the

Commissioner's factual findings).

## II.   Discussion

### A.   Issues on Appeal

Plaintiff raises two issues on appeal.  First, Plaintiff argues that the ALJ's residual functional capacity ("RFC') determination is unsupported by substantial evidence because the ALJ failed to reconcile the opinion of Dr. McCarthy with the RFC determination, despite affording it significant weight.  (Doc. 25 at 8.)  Had Dr. McCarthy's opinion been adopted, Plaintiff argues, she would have been limited to sedentary work and found disabled five years earlier.  (*Id*. at 9.)  Second, Plaintiff argues that the ALJ failed to explain why Ms. Ward's subjective statements were apparently contradicted by the medical evidence.  (*Id*. at 16.)  Plaintiff asserts:

> [E]xcept for the generalized language that the medical evidence did not preclude an ability to perform competitive work, no explanation was provided as to how the ALJ reached this conclusion.  Therefore, the analysis of Ms. Ward's subjective complaints is nothing more than a conclusory statement.

(*Id*.)

As to the first issue, Defendant counters by stating, "the ALJ fully considered Dr. McCarthy's opinion, including the limitation Plaintiff now cites, and properly found it supported his RFC assessment (Tr. 17-18.)"  (Doc. 26 at 14.)  Defendant continues by asserting "because Dr. McCarthy was a one-time examiner and not a treating doctor, his opinion was not entitled to any deference or special consideration," and that "[a]lthough the ALJ gave significant weight to Dr. McCarthy's opinion (Tr. 17-18), the ALJ had the

3

responsibility of assessing Plaintiff's RFC based on all the relevant evidence and was not required to adopt Dr. McCarthy's opinion verbatim.  (*Id.*)

As to the second issue, Defendant argues that the ALJ thoroughly recapped Plaintiff's allegations and that "Plaintiff's argument ignores the ALJ's discussion and actual findings, which compared Plaintiff's allegations to Plaintiff's medical records and opinion evidence (Tr. 16-19.)"  (*Id.* at 12.)

## B.    Standard for Evaluating Opinion Evidence

The ALJ is required to consider all the evidence in the record when making a disability determination.  *See* 20 C.F.R. §§ 404.1520(a)(3), 416.920(a)(3).  With regard to medical opinion evidence, "the ALJ must state with particularity the weight given to different medical opinions and the reasons therefor."  *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011).  However, "the ALJ may reject any medical opinion if the evidence supports a contrary finding."  *Wainwright v. Comm'r of Soc. Sec. Admin.*, No. 06-15638, 2007 WL 708971, *2 (11th Cir. Mar. 9, 2007) (per curiam); *see also Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985) (per curiam) (same).  "The ALJ is required to consider the opinions of non-examining [S]tate agency medical and psychological consultants because they 'are highly qualified physicians and psychologists, who are also experts in Social Security disability evaluation.'"  *Milner v. Barnhart*, 275 F. App'x 947, 948

4

(11th Cir. 2008) (per curiam); *see also* SSR 96-6p[3] (stating that the ALJ must

treat the findings of State agency medical consultants as expert opinion

evidence of non-examining sources).   While the ALJ is not bound by the

findings of non-examining physicians, the ALJ may not ignore these opinions

and must explain the weight given to them in his decision.   SSR 96-6p.

### C.   Standard for Evaluating Subjective Pain Testimony

When a claimant seeks to establish disability through her own

testimony of pain or other subjective symptoms, the Eleventh Circuit's three-

part "pain standard" applies.  *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir.

1991) (per curiam).   "If the ALJ decides not to credit such testimony, he must

articulate explicit and adequate reasons for doing so."  *Id*.

> The pain standard requires (1) evidence of an underlying medical
> condition and either (2) objective medical evidence that confirms
> the severity of the alleged pain arising from that condition or (3)
> that the objectively determined medical condition is of such a
> severity that it can be reasonably expected to give rise to the
> alleged pain.

*Id.*

Once a claimant establishes that his pain is disabling through objective

medical evidence from an acceptable medical source that shows a medical

---

[3] SSR 96-6p has been rescinded and replaced by SSR 17-2p effective March
27, 2017.  However, because Plaintiff's applications predated March 27, 2017, SSR
96-6p was still in effect on the date of the ALJ's decision.

impairment that could reasonably be expected to produce the pain or other

symptoms, pursuant to 20 C.F.R. § 404.1529(a), "all evidence about the

intensity, persistence, and functionally limiting effects of pain or other

symptoms must be considered in addition to the medical signs and laboratory

findings in deciding the issue of disability," *Foote*, 67 F.3d at 1561.  *See also*

SSR 16-3p[4] (stating that after the ALJ finds a medically determinable

impairment exists, the ALJ must analyze "the intensity, persistence, and

limiting effects of the individual's symptoms" to determine "the extent to

which an individual's symptoms limit his or her ability to perform work-

related activities").

     As stated in SSR 16-3p:

> In considering the intensity, persistence, and limiting effects of
> an individual's symptoms, [the ALJ must] examine the entire
> case record, including the objective medical evidence; an
> individual's statements about the intensity, persistence, and
> limiting effects of symptoms; statements and other information
> provided by medical sources and other persons; and any other
> relevant evidence in the individual's case record.
>
> . . .
>
> In evaluating an individual's symptoms, it is not sufficient for our
> adjudicators to make a single, conclusory statement that "the
> individual's statements about his or her symptoms have been
> considered" or that "the statements about the individual's

---

[4] SSR 16-3p rescinded and superseded SSR 96-7p, eliminating the use of the term "credibility," and clarifying that "subjective symptom evaluation is not an examination of an individual's character."  SSR 16-3p.

symptoms are (or are not) supported or consistent." It is also not enough for our adjudicators simply to recite the factors described in the regulations for evaluating symptoms.[5] The determination or decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms.

. . .

In evaluating an individual's symptoms, our adjudicators will not assess an individual's overall character or truthfulness in the manner typically used during an adversarial court litigation. The focus of the evaluation of an individual's symptoms should not be to determine whether he or she is a truthful person. Rather, our adjudicators will focus on whether the evidence establishes a medically determinable impairment that could reasonably be expected to produce the individual's symptoms and given the adjudicator's evaluation of the individual's symptoms, whether the intensity and persistence of the symptoms limit the individual's ability to perform work-related activities[.]

SSR 16-3p.

---

[5] These factors include: (1) a claimant's daily activities; (2) the location, duration, frequency, and intensity of the claimant's pain or other symptoms; (3) any precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate the claimant's pain or other symptoms; (5) any treatment, other than medication, received by the claimant to relieve the pain or other symptoms; (6) any measures (other than treatment) used to relieve the pain or other symptoms (*e.g.*, lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and (7) any other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. § 404.1529(c)(3); SSR 16-3p.

"[A]n individual's attempts to seek medical treatment for symptoms and to follow treatment once it is prescribed" will also be considered "when evaluating whether symptom intensity and persistence affect the ability to perform work-related activities." *Id.* "[I]f the frequency or extent of the treatment sought by an individual is not comparable with the degree of the individual's subjective complaints, or if the individual fails to follow prescribed treatment that might improve symptoms, [the adjudicator] may find the alleged intensity and persistence of an individual's symptoms are inconsistent with the overall evidence of record." *Id.* However, the adjudicator "will not find an individual's symptoms inconsistent with the evidence in the record on this basis without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints." *Id.* In considering an individual's treatment history, the adjudicator may consider, *inter alia,* one or more of the following:

- That the individual may have structured his or her activities to minimize symptoms to a tolerable level by avoiding physical activities or mental stressors that aggravate his or her symptoms;
- That the individual may receive periodic treatment or evaluation for refills of medications because his or her symptoms have reached a plateau;
- That the individual may not agree to take prescription medications because the side effects are less tolerable than the symptoms;

- That the individual may not be able to afford treatment and may not have access to free or low-cost medical services;
- That a medical source may have advised the individual that there is no further effective treatment to prescribe or recommend that would benefit the individual;
- That due to various limitations (such as language or mental limitations), the individual may not understand the appropriate treatment for or the need for consistent treatment.

*Id.*

## D.   Relevant Evidence of Record

### i.   Gregory E. McCarthy, M.D.

On November 18, 2016, Plaintiff presented to Dr. McCarthy for a consultative examination.  (Tr. 532.)  Dr. McCarthy's opinions were, in relevant part, as follows:

> IMPRESSIONS: Claimant is a 52-year-old female who appeared cooperative and appeared to give her best effort during the evaluation.  Given today's evaluation, it appears the claimant would be capable of walking short distances on even terrain. Given today's evaluation, claimant would likely be capable of sitting, standing, walking if done on an occasional basis in an 8-hour day.  Claimant would also be capable of lifting and carrying 10-20 pounds on an occasional basis.  Claimant would not have difficulties with bending, stooping, crouching, kneeling, and squatting.  Claimant would be capable of reaching, handling, and grasping.  There were no visual or communicative limitations.
>
> DIAGNOSIS AND PROGNOSIS: Claimant has elevated blood pressure, not controlled, history of asthma and COPD, not controlled, cataract [in the left eye], history of pneumonia, irregular heartbeat, and chronic pain in the left shoulder and left leg.  Given today's evaluation, it appears claimant may be

experiencing some alcohol withdrawal as blood pressure is very elevated and she has difficulty with her tandem gait procedure and appears she has tremors in the hands and arms that would be consistent with [alcohol withdrawal] as there is a smell of old alcohol on her breath.

(Tr. 533.)

### ii. James R. Shoemaker, D.O. and Physician Assistant Monique Medina

On May 17, 2019, Plaintiff presented to Dr. Shoemaker for a physical

examination. (Tr. 550.) Dr. Shoemaker's findings were as follows:

Lower extremities reveal full [range of motion] of the hips, knees, ankles, and feet, except those abnormalities[,] if noted[,] on range of motion sheet. No evidence of pretibial or ankle edema, or ulcerations. Moderate pain with passive range of motion of bilateral hips, left greater than right, with internal and external rotation flexion. There are varicose veins present to left lower extremity without signs of inflammation. Strength is 5/5 bilaterally. Sensation is intact bilaterally. Patient's gait is minimally antalgic due to current lower extremity muscle cramps. Patient loses balance with tandem walk.

(Tr.552.)

Plaintiff's lumbosacral spine x-rays revealed diffuse moderate

degenerative disc disease with retrolisthesis of L4 and L5. (Tr. 553.)

Plaintiff's bilateral hips and pelvis x-rays revealed mild osteoarthritis and

decreased bone density to femoral neck in the right hip, and decreased bone

density to femoral neck in the left hip, with no acute abnormalities in the

pelvis. (*Id.*) Physician Assistant ("PA") Medina noted that all of Plaintiff's

range of motion measurements were normal. (Tr. 554-556.) Concerning

Plaintiff's postural activities, P.A. Medina indicated that Plaintiff could climb

stairs and ramps, balance, stoop, kneel, crouch, and crawl frequently, and

climb ladders and scaffolds occasionally.  (Tr.  560.)

### iii.    Hearing Testimony

Plaintiff had three separate hearings before the ALJ: April 29, 2019,

September 23, 2019[6], and a final hearing on February 24, 2020.  (Tr. 30-73.)

Plaintiff's April 29, 2019 hearing testimony was, in relevant part, as follows:

> Q.     [Alright], so let's talk about what's been keeping you from working.  So, you mentioned that because of your medical conditions, you would have to leave early.  Can you explain what you mean?
> A.     I have asthma and I have high blood pressure[.] [There's] pain in my legs to where I can't stand [any] longer.
> Q.     What's causing the pain in your leg?
> A.     To be honest, I'm not for certain.  I have not had that evaluated.  Personally, I think its circulation.  The pain is a consistent pain.  Just the tingling running up and down my legs, which it's doing right now and my feet are falling asleep.
> . . .
> Q.     Why is that ma'am? You haven't seen a doctor in the last four years?
> A.     No, I have not been working.  I do not have the monies to get a doctor or insurance.  I just recently had the paperwork for Good Samaritan, which [is also] going to require me to have some money.  I don't have it.
> . . .
> Q.     Okay. So, what are your problems other than asthma, high blood pressure[,] and pain in your legs[?]  Anything else?
> A.      I have a cataract in my left eye.  A lot of it is just the constant pain that I have going on.  I have asked to have it looked

---

[6] The September 23, 2019 hearing is not discussed in detail as it was brief and rescheduled due to the State Agency expert's inability to access certain electronic evidence.  (Tr. 49.)

11

at and they have not.

Q.     Constant pain in your leg?
A.     My legs, my hands.
Q.     What is your pain level on a 10-point scale on a typical day?
A.     About a 9.
Q.     Severe pain every day?
A.     Yes.
Q.     And you've never had that treated by a doctor?
A.     I have asked[.] I have stated to them several times that I
have severe pain in my legs.  I do not know what was causing it.
. . .
Q.     Do you have any difficulty with sitting?
A.     For long periods of time I cannot sit.
. . .
Q.     How many minutes would you say during the day you
[elevate your legs]? Minutes or hours?
A.     No, not hours.  Minutes, maybe 30, because I can't sit [any]
longer.
Q.     Do you have any difficulty lifting things?
A.     A gallon of milk is heavy.

(Tr. 61-65.)

On February 24, 2020, the Plaintiff appeared before the ALJ for a third

and final hearing.  Plaintiff's testimony, in relevant part, was as follows:

Q.     Ms. Ward, is there anything you want to say?
A.     Yeah, excuse me.  As far as lifting and standing and
walking that they proclaim[,] [n]one of that happens.  Ten pounds
is about the most I can lift.  Stair climbing, there better be
something to hold onto and it's one step at a time.  Standing,
right now, my legs are killing me and I'm pretty much leaning
across the counter.  The pain is still there regardless of when I
quit drinking, it's still there.  It's not going away.  It's actually
gotten worse.

(Tr. 42.)

State agency expert, Dr. Golub also appeared at the February 24, 2020

hearing.  Dr. Golub testified in relevant part as follows:

> Q.     Based on your review, what are the diagnoses here?
> A.     Well, the claimant has a history of alcohol and tobacco
> excess.  In addition, a history of asthma, which is described as
> mild and intermittent, hypertension, which is poorly controlled,
> and low back pain.  The low back pain I noticed throughout the
> record; however, the only imaging I saw was an x-ray and it was
> not especially revealing.  In addition, in 6-F, a consultative exam
> was done November 16, where the claimant had complaints of
> pain in multiple joint sites.  However, the physical exam was
> entirely within normal limits.  And, the x-ray of the lumbar spine
> did show some degenerative disc disease and the hips, the same
> report.
> . . .
> Q.     What are the work-related limitations?
> A.     She can lift and carry ten pounds frequently and 20 pounds
> occasionally.  In an eight-hour day, I think she could sit for seven
> hours and stand and walk for six.  I did not see anything to
> require limitations with the use of the upper extremities.
> Postural functions, stairs could be done frequently.  Other
> postural functions, [such as] crawling [and] kneeling, could all be
> done occasionally.  I would avoid exposure to unprotected heights.
> I would avoid excessive exposure to pulmonary irritants and
> extreme cold should be avoided as well.
> . . .
> Q.     How severe is the lumbar spine impairment according to
> the x-rays of 6-F, 8-F, and 9-F?
> A.     Well, it's reported to be significant degree of osteoarthritis,
> but can I ask you how old the claimant is?
> Q.     She changed her age category, Doctor.  She [was] 50 at
> onset and she turned 55, I believe, September 25, 2019.
> . . .
> A.     The reason I ask is because x-rays are quite unreliable.
> You can't make a leap from an x-ray to clinical symptoms. . .
> Q.     Okay, but the x-ray at 9-F, Page 30, does say severe diffuse
> disc narrowing, advanced spondylosis and severe degenerative
> disc disease, correct?
>
> A.     Yes.  You need more specific imaging to use that as a
> clinical barometer.

Q.    What kind of imaging do you need, Doctor?

A.    You need an MRI or, at the very least, a [CT] scan.

(Tr. 32-37.)

### E.    The ALJ's Decision

At step two of the sequential evaluation process[7], the ALJ found that

Plaintiff had the following severe impairments: low back pain, bilateral hip

pain, hypertension, asthma, left eye cataract, and alcohol abuse.  (Tr. 15.)  At

step three, the ALJ found that since May 31, 2015, Plaintiff did not have an

impairment or combination of impairments that met or medically equaled the

severity of one of the listed impairments.  (Tr. 16.)

Then, before proceeding to step four, the ALJ determined that Plaintiff

had the RFC to perform light work as defined in 20 CFR § 404.1567(b) and §

416.967(b) with limitations.  (*Id*.)  The ALJ limited Plaintiff to lifting and

carrying 20 pounds occasionally and 10 pounds frequently, sitting for 7 hours

and standing/walking for 6 hours in an 8-hour workday, climbing stairs and

ramps no more than frequently and performing other postural activities no

more than occasionally.  (*Id*.)  In doing so, the ALJ discussed the evidence of

record.  (Tr. 16-19.)  He found that while Plaintiff's medically determinable

impairments could reasonably be expected to cause the alleged symptoms,

---

[7] The Commissioner employs a five-step process in determining disability.
*See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

her statements concerning the intensity, persistence, and limiting effects of

those symptoms were "not entirely supported for the reasons explained in

[the] decision."  (Tr. 16.)

Then, after determining that Plaintiff was unable to perform any past

relevant work, at the fifth and final step of the sequential evaluation process,

the ALJ found that there were jobs existing in significant numbers in the

national economy that Plaintiff could perform, such as labeler, ticker seller,

and inspector and packer.  (Tr. 20-21.)  All of these representative

occupations are light jobs with a Specific Vocational Preparation ("SVP")

rating of 2.  (Tr. 21.)

**F.     Analysis**

As to the first issue, the Court agrees with Plaintiff that the ALJ erred

when he failed to explain why he did not credit Dr. McCarthy's opinion that

she "would be capable of sitting, standing, [and] walking[,] if done so on an

occasional basis in 8-hour day," in arriving at Plaintiff's RFC.  Despite giving

"significant weight" to Dr. McCarthy's opinions, the ALJ failed to explain the

conflict between his RFC determination of light work and Dr. McCarthy's

occasional walking and sitting limitation.  (*See* Tr. 18.)  This omission is

significant because the Vocational Expert ("VE") testified that "when [labeler,

ticket seller, and inspector packer] were analyzed by the Department of

Labor, the standing was in the frequent range and [the VE] believe[d] that is

15

why [labeler, ticket seller, and inspector packer] [were] listed as light." (Tr. 44.)  At the same time, as Plaintiff points out, frequent means occurring from one-third to two-thirds of the time, and Dr. McCarthy opined that Plaintiff could only occasionally walk/sit/stand, while the light exertional level of work requires her to do these actions frequently.  (Doc. 25 at 10 (citing SSR 83-10).)

"The RFC assessment must always consider and address medical source opinions.  If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted."  SSR 96-8p.  The Court is not persuaded by Defendant's argument that the ALJ "fully" considered Dr. McCarty's opinion.  Indeed, the ALJ recited Dr. McCarthy's opinion, but a portion of it clearly conflicts with the ALJ's RFC assessment.  Merely reciting the opinion without explaining the rationale for rejecting a conflicting portion is insufficient.  Thus, the case shall be reversed and remanded with instructions to the ALJ to reconsider the opinions of Dr. McCarthy, explain what weight the opinion is being accorded, and the reasons therefor.

As to the second issue, the Court finds that the ALJ's decision finding Plaintiff's subjective pain testimony inconsistent with the objective evidence was erroneous because proper diagnostic imaging was lacking.  Plaintiff attacks, *inter alia*, the ALJ's consideration of the diagnostic imaging.  (Doc. 25 at 17.)  While the Court does not agree that the ALJ was inappropriately

"playing doctor," the Court is concerned with the ALJ's failure to fully develop the record by not ordering more diagnostic imaging.  Pursuant to 20 C.F.R. § 416.917, the ALJ is required to order additional medical tests when the claimant's medical sources do not give sufficient medical evidence to make a determination as to disability.  Here, Dr. Golub clearly stated on the record that "without further imaging," he could not draw any conclusions regarding the severity of Plaintiff's lumbar spine impairment and her limitations with walking.  (Tr. 39.)  Yet, the ALJ relied on Dr. Golub's opinion without sending Plaintiff for further diagnostic imaging.  Indeed, the ALJ himself noted that "[d]iagnostic imaging also did not establish the presence of any conditions that would have been expected to prevent all work" (Tr. 19), but he failed to consider Dr. Golub's statement that, more diagnostic imaging is necessary because "you can't see soft tissue on an x-ray[,]" and "[w]hen we look at an MRI, you're seeing soft tissue, you're seeing if there's any stenosis of the central cord[,] [w]e're looking to see if there's any nerve root impingement."  (Tr. 37.)

As the present record is devoid of any MRI or CT scans that speak to the severity of Plaintiff's lower back issues, Dr. Golub's testimony should have alerted the ALJ to the need for further imaging to determine whether Plaintiff's subjective pain symptoms aligned with the medical evidence.  "Social Security proceedings are inquisitorial rather than adversarial.  It is

17

the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits." *Sims v. Apfel,* 530 U.S. 103, 110–111 (2000). In this regard, the ALJ failed in his duty to develop the record, which in turn lead to him improperly discounting Plaintiff's pain allegations.

Based on the foregoing, the ALJ's reasons for discounting Plaintiff's complaints of pain and related symptoms prior to September 25, 2019, and the limiting effects of these symptoms in assessing the RFC, are not supported by substantial evidence.  In light of this conclusion and the possible change in the RFC assessment for the relevant period, the Court finds reversal and remand warranted.  *See Jackson v. Bowen,* 801 F.2d 1291, 1294 n.2 (11th Cir. 1986) (per curiam); *Freese v. Astrue,* No. 8:06-cv-1839-T-EAJ, 2008 WL 1777722, at *3 (M.D. Fla. Apr. 18, 2008); *see also Demenech v. Sec'y of the Dep't of Health & Human Servs.*, 913 F.2d 882, 884 (11th Cir. 1990) (per curiam).

Accordingly, it is **ORDERED**:

1.      The Commissioner's decision is **REVERSED and REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g), with instructions to the ALJ to: (a) reconsider Dr. McCarthy's opinion, explain whether the portion discussing Plaintiff's occasional ability to walk/stand/sit is adopted, and the reasons therefor; (b) reconsider the RFC assessment; (c) order an MRI or CT scan to determine if the severity of Plaintiff's subjective complaints correlate

with the proper medical images; and (d) conduct any further proceedings

deemed appropriate.

2.      The Clerk of Court is directed to enter judgment accordingly,

terminate any pending motions, and close the file.

3.      In the event that benefits are awarded on remand, any § 406(b)

or § 1383(d)(2) fee application shall be filed within the parameters set forth

by the Order entered in *In re: Procedures for Applying for Attorney's Fees*

*Under 42 U.S.C. §§ 406(b) & 1383(d)(2)*, Case No.: 6:12-mc-124-Orl-22 (M.D.

Fla. Nov. 13, 2012).  This Order does not extend the time limits for filing a

motion for attorney's fees under the Equal Access to Justice Act, 28 U.S.C. §

2412.

**DONE AND ORDERED** at Jacksonville, Florida, on August 17, 2022.

_____

MONTE C. RICHARDSON
UNITED STATES MAGISTRATE JUDGE

Copies to:

Counsel of Record

19